✓ FILED ___ ENTERED
___ LOGGED ____ RECEIVED

11:12 am, Oct 30 2023
AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ Deputy

JDM 2.22.23



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

Tamera L. Fine
Assistant United States Attorney
Tamera.Fine@usdoj.gov

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4806
MAIN: 410-209-4800
FAX: 410-962-3124

February 22, 2023

Steven H. Levin
Rosenberg Martin Greenberg, LLP
25 South Charles Street, 21st Floor
Baltimore, Maryland 21201
slevin@rosenbergmartin.com

Re: United States v. Cierra Glover,
Criminal No. JRR-22-0264

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Cierra Glover (hereinafter, the "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by March 15, 2023, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offenses of Conviction

1. The Defendant agrees to plead guilty to Count Seven of the Criminal Indictment now pending against her in *United States v. Cierra Clover*, JRR-22-264 (D. Md.), which charges her with Structuring Monetary Transactions in violation of 31 U.S.C. § 5324(a)(3).

### Elements of the Offense

2. The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

    a. That on or about the dates charged in the Indictment, in the District of Maryland:

        1. Defendant conducted currency transactions with or at domestic financial institutions, specifically Navy Federal Credit Union and Wells Fargo, which are both federally insured;

        2. Defendant knew that a report (CTR) was required for currency transactions in excess of $10,000 and that structuring transactions to avoid reporting is illegal;

3. Defendant knowingly and willfully structured, assisted in structuring or attempted to structure currency transactions;

4. Defendant did so with the intent to evade the reporting requirement.

## Penalties

3. The maximum penalties provided by statute for the offense(s) to which the Defendant is pleading guilty are as follows:

| Count | Statute | Mandatory Minimum Prison | Maximum Prison | Max. Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 1 | 31 U.S.C. §5324(a)(3) | N/A | 10 years | 3 years | $500,000 | $100 |

    a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

    b. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

    c. Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

    d. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

    e. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

    f. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay,

and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Waiver of Rights

4. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

   a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

   c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

   d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

   e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

   f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be

admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

    g.  If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

    h.  By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

  5.  The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551–3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

  6.  This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

    a.  Base Offense Level: This Office and the Defendant agree that the **applicable base offense level is 16** pursuant to United States Sentencing Guidelines ("U.S.S.G.") §§ 2S1.3(a)(2) & 2B1.1(b)(1)(F); $242,000 in funds)

    b.  There is a **two (2) level enhancement** under U.S.S.G. § 2S1.3(b)(2) for laundering more than $100,000 in a 12-month period.

    c.  Criminal History Category: The parties believe that the Defendant has no prior criminal convictions. Nevertheless, there is no formal agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal

4

history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income; and

        d.       Acceptance of Responsibility: This Office does not oppose a **two (2) level reduction** in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional **one (1) level decrease** in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

        7.       **The adjusted guidelines level for the offense is 15.**

        8.       Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

        9.       At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable period of supervised release and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing.

### Rule 11 (c) (1) (C) Plea

        10.      The Parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of 24 months of probation is the appropriate disposition of the criminal conduct in this case, taking into consideration the nature and circumstances of the offense, the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a). This Agreement does not affect the parties' ability to argue for or against, or the Court's discretion to set any lawful conditions of probation, such as a period of home detention. In the event that the Court rejects this Agreement, except under the circumstances noted below, either party may elect to declare the Agreement null and void. Should the Defendant so elect, the Defendant will be afforded the opportunity to withdraw her plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). The parties agree that if the Court finds that the Defendant engaged

in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the Government will be bound by the specific sentence contained in this Agreement, and the Defendant will not be able to withdraw her plea.

## Waiver of Appeal

11.     In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

     a.     The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

     b.     The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), **except that the Defendant reserves the right to appeal any sentence of imprisonment, should the Court refuse to accept the C-Plea and the Defendant opt to continue to sentencing despite that decision.**

     c.     The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Forfeiture

12.     The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

13.     Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities.

14.     The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J),

6

32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

15. The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

16. The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

## Defendant's Conduct Prior to Sentencing and Breach

17. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

18. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea if the Court finds that the Defendant breached the Agreement.

## Court Not a Party

19. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation

in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. However, if the Court imposes any sentence outside of the 24-month probationary sentence agreed to by the parties for the criminal conduct charged in the indictment and related conduct, then either the United States or the Defendant may withdraw from the plea.

Entire Agreement

20. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Erek L. Barron
United States Attorney

Tamera L. Fine
Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

2/24/23
Date

Cierra Glover

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

2/27/23
Date

Steven H. Levin, Esq.

## ATTACHMENT A

### STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

1. No later than fall of 2017, the defendant Cierra Glover (the "Defendant" or "Ms. Glover") was in a relationship with Paul Alexander, identified as a narcotics source of supply for multiple drug trafficking organizations in the Baltimore metropolitan area. (Alexander was convicted by a jury of multiple federal drug and firearm charges and sentenced to 360 months in Criminal Case No. ELH-19-0020.) During the course of the investigation, it was learned that Ms. Glover was assisting Alexander with financial transactions using drug proceeds. Ms. Glover structured drug proceeds into her bank accounts at the Navy Federal Credit Union and Wells Fargo, obtained Cashier Checks and then purchased Jewelry in her name using a combination of U.S. Currency and the Cashier's Checks drawn on these accounts.

2. More specifically, Ms. Glover had previously opened Navy Federal Credit Union personal checking account number 7037631020 and personal savings account number 3049629318 on October 18, 2014. Ms. Glover opened Wells Fargo personal checking account number 9164327810 and personal savings account number 2354449361 on December 27, 2017. These four accounts – the two Navy FCU and the two Wells Fargo accounts were opened in the Defendant's name. On April 5, 2018 Ms. Glover opened Wells Fargo business checking account number 9162747472 in the business name "Me Too Investments, LLC.

3. From September 19, 2017 through August 10, 2018, Ms. Glover repeatedly used these five accounts to structure cash deposits in excess of the $10,000 to avoid financial institution reporting requirements for the filing of Currency Transaction Reports.

4. The table below illustrates some of the structured bank deposits by date, time, location, amount, and the bank account number:

9

| Count # | AMOUNT | DATE | ACCOUNT | Description |
|---|---|---|---|---|
| 2 | $8,000.00 | 9/19/2017 | NFCU Acct. #1 | Cash deposit |
| 2 | $550.00 | 9/19/2017 | NFCU Acct. #2 | Cash deposit |
| 3 | $1,300.00 | 9/24/2017 | NFCU Acct. #2 | Cash deposit |
| 3 | $8,000.00 | 9/26/2017 | NFCU Acct. #1 | Cash deposit |
| 4 | $280.00 | 9/28/2017 | NFCU Acct. #2 | Cash deposit |
| 4 | $9,000.00 | 9/28/2017 | NFCU Acct. #1 | Cash deposit |
| 5 | $2,000.00 | 12/15/2017 | NFCU Acct. #2 | Cash deposit |
| 5 | $8,000.00 | 12/18/2017 | NFCU Acct. #1 | Cash deposit |
| 6 | $8,000.00 | 12/19/2017 | NFCU Acct. #1 | Cash deposit |
| 6 | $8,500.00 | 12/20/2017 | NFCU Acct. #1 | Cash deposit |
| 7 | $3,200.00 | 12/27/2017 | NFCU Acct. #2 | Cash deposit |
| 7 | $5,800.00 | 12/27/2017 | NFCU Acct. #2 | Cash deposit |
| 7 | $9,170.00 | 12/27/2017 | WF Acct. #1 | Cash deposit |
| 8 | $1,500.00 | 12/28/2017 | WF Acct. #1 | Cash deposit |
| 8 | $4,800.00 | 12/28/2017 | NFCU Acct. #2 | Cash deposit |
| 8 | $9,700.00 | 12/29/2017 | NFCU Acct. #2 | Cash deposit |
| 9 | $9,000.00 | 1/17/2018 | NFCU Acct. #2 | Cash deposit |
| 9 | $9,000.00 | 1/17/2018 | WF Acct. #1 | Cash deposit |
| 10 | $7,000.00 | 1/18/2018 | NFCU Acct. #1 | Cash deposit |
| 10 | $7,000.00 | 1/18/2018 | WF Acct. #1 | Cash deposit |
| 11 | $3,000.00 | 2/21/2018 | NFCU Acct. #2 | Cash deposit |
| 11 | $1,000.00 | 2/21/2018 | WF Acct. #1 | Cash deposit |
| 11 | $3,000.00 | 2/22/2018 | NFCU Acct. #2 | Cash deposit |
| 11 | $1,000.00 | 2/24/2018 | NFCU Acct. #2 | Cash deposit |
| 11 | $1,000.00 | 2/25/2018 | WF Acct. #1 | Cash deposit |
| 12 | $245.00 | 3/5/2018 | NFCU Acct. #2 | Cash deposit |
| 12 | $655.00 | 3/5/2018 | NFCU Acct. #2 | Cash deposit |
| 12 | $1,110.00 | 3/5/2018 | NFCU Acct. #2 | Cash deposit |
| 12 | $2,027.00 | 3/7/2018 | WF Acct. | Cash deposit |
| 12 | $7,000.00 | 3/8/2018 | NFCU Acct. #1 | Cash deposit |

| 13 | $1,000.00 | 4/5/2018 | WF Acct. #1 | Cash deposit |
| 13 | $9,000.00 | 4/5/2018 | NFCU Acct. #2 | Cash deposit |
| 13 | $7,500.00 | 4/5/2018 | WF Acct. #2 | Cash deposit |
| 13 | $7,500.00 | 4/6/2018 | NFCU Acct. #2 | Cash deposit |
| 14 | $9,400.00 | 4/16/2018 | WF Acct. #1 | Cash deposit |
| 14 | $9,100.00 | 4/16/2018 | NFCU Acct. #2 | Cash deposit |
| 15 | $9,000.00 | 4/18/2018 | NFCU Acct. #2 | Cash deposit |
| 16 | $9,100.00 | 7/2/2018 | NFCU Acct. #2 | Cash deposit |
| 17 | $3,590.00 | 7/13/2018 | NFCU Acct. #2 | Cash deposit |
| 17 | $5,410.00 | 7/13/2018 | NFCU Acct. #2 | Cash deposit |
| 18 | $7,310.00 | 7/14/2018 | NFCU Acct. #2 | Cash deposit |
| 18 | $700.00 | 7/14/2018 | NFCU Acct. #2 | Cash deposit |
| 18 | $2,020.00 | 7/18/2018 | WF Acct. #1 | Cash deposit |
| 19 | $4,700.00 | 8/9/2018 | NFCU Acct. #2 | Cash deposit |
| 19 | $5,000.00 | 8/10/2018 | WF Acct. #2 | Cash deposit |

5. Between September 2017 and August 2018, the Defendant structured at least **$230,167** of Alexander's drug proceeds into bank accounts she owned and controlled.

6. Ms. Glover did not personally benefit from the transactions; that is, she did not take or retain a percentage of the funds for her own use.

SO STIPULATED:

Digitally signed by TAMERA FINE
Date: 2023.02.27 13:20:58 -05'00'

Tamera L. Fine
Assistant United States Attorney

I have read this Factual Stipulation and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. It accurately reflects what I did and what the government could prove I did. I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

2/24/23
Date

Cierra Glover
Defendant

I am Cierra Glover's attorney. I have carefully reviewed every part of this Factual Stipulation, with her. She advises me that she understands and accepts its terms. To my knowledge, her decision to enter into this agreement is an informed and voluntary one.

___2/27/23___  
Date

_____  
Steven H. Levin. Esq.  
Counsel for the Defendant